IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOLLIE NORMA MELCHOR,<br><br>           Petitioner,<br><br>     v.<br><br>DEBORAH K. JOHNSON, Warden,<br><br>           Respondent. | **Case No. 1:14-cv-01048 MJS (HC)**<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY** |

Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent, warden of Central California Women's Facility, Chowchilla, is represented by Julie A. Hokans of the office of the California Attorney General. Both parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). (ECF Nos. 7-8.)

I.     **PROCEDURAL BACKGROUND**

Petitioner is currently incarcerated pursuant to a judgment of the Superior Court of California, County of Tulare, following her no contest pleas on October 13, 2011 to first degree robbery, grand theft with use of a firearm, elder abuse, second degree

1 commercial burglary, and an enhancement for a prior conviction. (Clerk's Tr. at 306-07.) On December 14, 2011, the trial court sentenced Petitioner to a determinate term of eight (8) years in state prison. Id.

Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate District. (Lodged Doc. 1.) On February 4, 2013, the court affirmed the judgment. (Lodged Doc. 4.) Petitioner filed a petition for review with the California Supreme Court on March 18, 2013. (Lodged Doc. 7.) The Supreme Court summarily denied the petition on May 15, 2013. (Lodged Doc. 8.) Petitioner did not seek collateral review of her convictions in the state courts.

Petitioner filed the instant federal habeas petition on July 3, 2014. (Pet., ECF No. 1.) In the amended petition, Petitioner presents a single claim, namely, that she was forced to testify against her co-defendants in violation of her Fifth Amendment rights. (Pet.)

Respondent filed an answer to the petition on November 5, 2014, and Petitioner filed a traverse to the answer on December 10, 2014. (Answer and Traverse, ECF Nos. 13, 15.) Accordingly, the matter stands fully briefed and ready for adjudication.

## II.  STATEMENT OF THE FACTS[1][2]

> On May 9, 2010, 81-year-old Israel Reyna was inside his home when three females came to the door and asked about buying some plants from him. Reyna went outside to show the women the plants, at which point he was grabbed from behind by a male and forced to the ground. The man held a gun to Reyna's head and demanded his money. The man removed Reyna's wallet from his pants and took about $140. The man then removed Reyna's belt and used it to tie Reyna's hands in front of him. After awhile, when he felt it was safe to do so, Reyna got up and went inside the house where he noticed a cell phone and two rifles were missing.
>
> Detective Kevin Kroeze spoke with Alexis Solis about the incident. Solis said that she was a passenger in a truck along with Melchor and Tiffany Robinson; Julian Alderete was driving the truck. On the way back

---

[1] The Fifth District Court of Appeal's summary of the facts in its February 4, 2013 opinion is presumed correct. 28 U.S.C. § 2254(e)(1).

[2] The facts are taken from the preliminary hearing because Melchor pled no contest to the charges.

2

from a trip to a casino, Alderete drove the truck to a home outside Goshen, where he told the three females to contact the "old man" at the residence to distract him and that Alderete was going to hide in the bushes. After the women made contact with the man in the residence, Solis saw Alderete "put up his finger across his mouth as if to say be quiet or not say anything." Solis became scared and returned to the truck. At one point, she looked back and saw Alderete put a gun to the man's head and force him to the ground. Solis stayed near the truck with Robinson. A few minutes later, Melchor returned to the truck. On redirect examination, Detective Kroeze testified that he believed that Solis had said Melchor returned to the truck with a cell phone and wallet.

Detective Kroeze spoke with Melchor on June 7, 2011, following her arrest on a warrant in Kings County. Melchor was advised of and waived her Miranda[fn3] rights. She first claimed that when she arrived at the house, she did not know what was going on, but she later admitted that Alderete knew the man and did not want the man to recognize him. Melchor told Detective Kroeze she had taken a box with jewelry from the house.

**FN3**: Miranda v. Arizona (1966) 384 U.S. 436.

PROCEDURAL HISTORY

On May 12, 2011, a criminal complaint filed in Tulare County charged Melchor and Alderete jointly with various counts stemming from the robbery and burglary that took place on May 9, 2010. Alderete was also charged with additional crimes not involving Melchor. The preliminary hearing was scheduled for both defendants on July 5, 2011, but Melchor was not able to be transported as originally planned because she had pending matters in Kings County.

While Melchor was awaiting her preliminary hearing, the prosecution went to trial against Alderete and filed a motion on July 25, 2011, to compel Melchor to testify in Alderete's case, offering use immunity under section 1324. At a hearing on August 2, 2011, Melchor objected, asserting that her Fifth Amendment right could only be protected by a grant of transactional immunity. The trial court granted use immunity and ordered Melchor to testify because it believed she was adequately protected.[fn4]

**FN4**: On our own motion, we take judicial notice of the order, which is contained in Julian Alderete's appellate file. (Evid. Code, § 452, subd. (d).)

At Alderete's trial, Melchor answered the prosecution's questions, including that she knew Robinson and Solis; that she had known Alderete for 40 years; and that she had spoken to Detective Kroeze. When she was asked if she had gone to a house in Goshen on May 9, 2010, with Alderete, Melchor pled the Fifth Amendment and was directed by the trial court to answer additional questions. After the trial court assured her that none of her testimony could be used against her, Melchor acknowledged that she had gone to the house in Goshen with Alderete, Solis and Robinson and that everyone had gotten out of the car. Melchor testified that all of the women, including herself, met with the old man and that Alderete was behind them. When Melchor was asked if she had seen Alderete do anything, she said "no," and refused to answer any more

3

questions. The trial court then found her in contempt.

The following day at trial, Melchor continued to assert her Fifth Amendment right, with her own attorney further arguing for her right to transactional immunity. After Melchor's counsel informed Melchor that she needed to answer the questions if she did not wish to be held in contempt, Melchor stated that she would, but neither the prosecution nor the defense made any further inquiries of her.

Melchor's preliminary hearing was then held on August 15, 2011; she was held to answer. An information was filed August 25, 2011, charging Melchor with the same crimes she was earlier charged with, this time individually.

On August 29, 2011, Melchor pleaded not guilty to the charges and denied the allegations. That same day, Melchor filed a motion to dismiss the information pursuant to section 1099, which was heard and denied on September 15, 2011.

On October 13, 2011, Melchor withdrew her not guilty plea and pleaded no contest to the counts in the information and admitted the prior conviction allegations associated with one count. The trial court gave an indicated sentence of eight years in state prison. At sentencing on December 14, 2011, the trial court struck Melchor's prior strike conviction and sentenced her to a total of eight years in state prison.

Melchor requested and was granted a certificate of probable cause.

People v. Melchor, 2013 Cal. App. Unpub. LEXIS 896, 1-6 (Feb. 4, 2013).

### III.    GOVERNING LAW

#### A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

#### B.    Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus

filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1. Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06. "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted). The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009). For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003). A state court decision will involve an "unreasonable application of" federal

5

1 law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529 U.S. at 410) (emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009), quoted by Richter, 131 S. Ct. at 786.

2. Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). This is referred to as the "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, "does not require that there be an opinion from the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Richter instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under §

2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

### 3. Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002). Musalin v. Lamarque, 555 F.3d at 834.

## IV. REVIEW OF PETITION

Petitioner contends that her Fifth Amendment right against self-incrimination was violated when she was required to testify at her co-defendant's trial. (Pet.)

### 1. State Court Decision

Petitioner presented her claim in his direct appeal to the California Court of Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the Court of Appeal and summarily denied in subsequent petition for review by the California Supreme Court. (See Lodged Docs. 4, 8.) Since the California Supreme Court denied the petition in a summary manner, this Court "looks through" the decisions and presumes the Supreme Court adopted the reasoning of the Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)).

In denying Petitioner's claim, the Court of Appeal explained that:

DISCUSSION

> Melchor contends that the trial court erred when it denied her motion to dismiss the charges pending against her. Specifically, she claims that the trial court's order that she testify for the People in Alderete's trial deprived her of her Fifth Amendment right against self-incrimination. She also contends that the trial court's grant of use immunity, instead of transactional immunity, under section 1324 did not provide her with protection equivalent to that provided by the Fifth Amendment. Finally, she claims that the trial court was required to use the procedure set forth in section 1099. We disagree with each of her claims.

Fifth Amendment Right Against Self-Incrimination

The Fifth Amendment to the United States Constitution provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself ...." The California Constitution provides a similar privilege: "Persons may not ... be compelled in a criminal cause to be a witness against themselves ...." (Cal. Const., art. I, § 15.) The privilege against self-incrimination includes two facets: (1) the privilege of a defendant, in a criminal proceeding against that defendant, not to testify at all and (2) the privilege of a person, as a witness in any proceeding, civil or criminal, to refuse to answer particular questions which may tend to incriminate him or her in criminal activity. (Cramer v. Tyars (1979) 23 Cal.3d 131, 137.)

On appeal, Melchor first contends that forcing her to testify in Alderete's trial violated her Fifth Amendment right as a defendant not to testify in a criminal proceeding. Melchor argues that, because she had the same charges pending against her for the May 9, 2010, crimes against Reyna as Alderete did, she, as a defendant and unlike an uncharged witness, had an absolute right not to testify in the criminal matter against Alderete.

Melchor relies, inter alia, on Cramer v. Tyars, supra, 23 Cal.3d 131, 137; United States v. Echeles (7th Cir. 1965) 352 F.2d 892, 897; People v. Whelchel (1967) 255 Cal.App.2d 455, 460, as well as Evidence Code section 930 for her contention. But each authority relied upon by Melchor merely recognizes the undisputed privilege of a defendant in a criminal proceeding against that defendant not to be a witness against himself. (See Cramer v. Tyars, supra, 23 Cal.3d at p. 137 [pursuant to the Fifth Amendment and the parallel California Constitution provision, as codified in Evidence Code section 930, "[i]n a criminal matter a defendant has an absolute right not to be called as a witness and not to testify"]; United States v. Echeles, supra, 352 F.2d at p. 897 (original italics) [the Fifth Amendment "gives any person the right to refuse to answer questions which might tend to incriminate him" but also prohibits "any person who is on trial for a crime *from being called to the witness stand*"]; People v. Whelchel, supra, 255 Cal.App.2d at p. 460 [under Fifth Amendment and parallel provision of California Constitution, "no person shall 'be compelled in any criminal case to be a witness against himself.'"].) Evidence Code section 930 provides that, to the extent that such privilege exists under the Constitution of the United States or the State of California, "a defendant in a criminal case has a privilege not to be called as a witness and not to testify."

Melchor provides no authority for the position that an individual, who is a defendant in a separate action, has a Fifth Amendment right not to be compelled to testify against a defendant in another matter. Melchor's claim therefore fails.

Section 1324

Melchor next contends that the use immunity granted her was not an adequate substitute for the privilege against self-incrimination. As noted, ante, the Fifth Amendment also provides the privilege of a person, as a witness in any proceeding, civil or criminal, to refuse to answer particular questions which may tend to incriminate him or her in criminal activity. (Cramer v. Tyars, supra, 23 Cal.3d at p. 137.)

9

California and federal "immunity statutes" provide that a witness who invokes the Fifth Amendment privilege against self-incrimination can be compelled to testify if, upon the prosecutor's request, the court grants the witness immunity from prosecution based on the compelled testimony. (§ 1324; 18 U.S.C. §§ 6002, 6003.) Two kinds of immunity – use immunity and transactional immunity – have constitutional sanction. Use immunity protects a witness only against the actual use of his or her testimony and the fruits of that testimony, whereas transactional immunity protects him or her against later prosecution related to matters about which he or she testified. (People v. Campbell (1982) 137 Cal.App.3d 867, 872; see also People v. Hunter (1989) 49 Cal.3d 957, 973, fn. 4; Kastigar v. United States (1972) 406 U.S. 441, 449-453.) Use immunity may overcome and replace the constitutional privilege only if, after the immunity is granted, it leaves the witness in the same relative position, vis-à-vis prosecution, as if the witness had simply claimed the privilege. (Kastigar v. United States, supra, 406 U.S. at pp. 458-459.) The immunity must "give protection equivalent to that which attends the refusal to testify about matters which incriminate." (People v. Campbell, supra, 137 Cal.App.3d at p. 873.)

Here the prosecutor requested an order requiring Melchor to answer questions, based on the prosecution's offer of use immunity to the witness under section 1324. While earlier versions of section 1324 required a grant of transactional immunity when a witness claiming a privilege against self-incrimination was compelled to testify (People v. Superior Court (Perry) (1989) 213 Cal.App.3d 536, 538, fn. 2), section 1324 was amended in 1996 to require that a witness with a valid privilege against self-incrimination need only be granted use immunity before being compelled by the court to testify. (Stats. 1996, ch. 302, § 1, pp. 2266-2267; see Assem. Com. on Public Safety on Assem. Bill No. 988 (1995-1996 Reg. Sess.) as amended Jan. 4, 1996, p. 1.) Section 1324 now reads, in relevant part:

> "In any felony proceeding ... if a person refuses to answer a question ... on the ground that he or she may be incriminated thereby, and if the district attorney of the county or any other prosecuting agency in writing requests the court, in and for that county, to order that person to answer the question ..., a judge shall set a time for hearing and order the person to appear before the court and show cause, if any, why the question should not be answered ..., and the court shall order the question answered ... unless it finds that to do so would be clearly contrary to the public interest, or could subject the witness to a criminal prosecution in another jurisdiction, and that person shall comply with the order. After complying, and if, but for this section, he or she would have been privileged to withhold the answer given ... by him or her, no testimony ... compelled under the order or any information directly or indirectly derived from the testimony ... may be used against the witness in any criminal case. But he or she may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing or contempt committed in answering, or failing to answer, ... in accordance with the order. Nothing in this section shall prohibit the district attorney or any other prosecuting agency from requesting an order granting use immunity or transactional immunity to a witness compelled to give

testimony ...." (§ 1324.)

Melchor argues that forcing her to testify under a grant of use immunity in Alderete's trial regarding the underlying facts of the charges pending against her violated her privilege against self-incrimination because use immunity did not provide her "protection equivalent to that which attends the refusal to testify about matters which incriminate." Melchor claims forcing her to testify allowed the prosecution numerous advantages in her own upcoming trial: to learn whether Melchor would deny, or attempt to explain, her statements to Detective Kroeze; to view her demeanor while testifying; to inform the prosecution of whether she was likely to testify in her own trial; and that any testimony by Melchor would enhance the effectiveness of any future examination of her in her own trial.

We agree with respondent that Melchor's claim fails because it is entirely speculative. Had Melchor chosen to proceed to trial, she would have had an absolute right not to testify. And, had she chosen to testify at her own trial, her testimony at Alderete's trial would not have been admissible to impeach her own trial testimony even if she had provided entirely inconsistent testimony. (§ 1324; see also Withrow v. Williams (1993) 507 U.S. 680, 705 (O'Connor, J., conc. in part and dis. in part) [describing "true Fifth Amendment claims" as "the extraction and use of compelled testimony"].) Additional claims by Melchor about how the prosecution would use her testimony at Alderete's trial to their advantage are purely speculative.

Section 1099

Finally, Melchor alleges an "additional" and "independent" ground requiring that the trial court grant her motion to dismiss, namely that section 1099 is the "exclusive" procedure for forcing her, as a defendant, to testify. Section 1099 provides:

> "When two or more defendants are included in the same accusatory pleading, the court may, at any time before the defendants have gone into their defense, on the application of the prosecuting attorney, direct any defendant to be discharged, that he may be a witness for the people."

Section 1101 further provides that the order mentioned in section 1099 "is an acquittal of the defendant discharged, and is a bar to another prosecution for the same offense." (§ 1101.)

Melchor relies on People v. Yeager (1924) 194 Cal. 452, 488, for the proposition that a codefendant cannot be compelled to be a witness for the prosecution unless the provisions of section 1099 "were put in force." But People v. Yeager involved a case in which the defendants were jointly indicted and jointly tried. (People v. Yeager, supra, at pp. 487-489.) The plain language of section 1099 further demonstrates that it applies only where defendants are jointly indicted and jointly tried.

Because Melchor and Alderete were tried separately, her argument fails.

People v. Melchor, 2013 Cal. App. Unpub. LEXIS 896 at 6-15.

11

### 2. Analysis

As an initial matter, Respondent contends that Petitioner's claim is barred by Teague v. Lane, 489 U.S. 288, 310 (1989). (Answer at 15-17). The United States Supreme Court has instructed that when a Teague argument has been "properly raised by the state," a federal habeas court must first determine whether a Teague bar exists before it may proceed to the merits of the petitioner's substantive claims. Horn v. Banks, 536 U.S. 266, 271-72 (2002); Leavitt v. Arave, 383 F.3d 809, 816 (9th Cir. 2004). Although a Teague argument that is not argued, or made only "in passing," need not be addressed, Arredondo v. Ortiz, 365 F.3d 778, 781-82 (9th Cir. 2004), this Court finds that Respondent has sufficiently presented its Teague argument here. As follows, this Court agrees that Teague bars Petitioner's claim.

The Teague rule is a "nonretroactivity principle" that "prevents a federal court from granting habeas corpus relief to a state prisoner based on a rule announced after his conviction and sentence became final." Caspari v. Bohlen, 510 U.S. 383, 389 (1994). Under Teague, a "new rule" is one which "breaks new ground or imposes a new obligation on the states or the federal government," and in which "the result was not dictated by precedent existing at the time the defendant's conviction became final." Teague, 489 U.S. at 301.

The "rule" need not already have been announced by the United States Supreme Court. Where a habeas claim would require the announcement of a new rule, Teague applies. See Saffle v. Parks, 494 U.S. 484, 487-88 (1990) ("As [the petitioner] is before us on collateral review, we must first determine whether the relief sought would create a new rule under [Teague]. If so, we will neither announce nor apply the new rule sought by [the petitioner] unless it would fall into one of two narrow exceptions.") (citations omitted); see also Stringer v. Black, 503 U.S. 222, 228, 112 S. Ct. 1130, 117 L. Ed. 2d 367 (1992) ("If . . . the decision [relied upon] did not announce a new rule, it is necessary to inquire whether granting the relief sought would create a new rule because the prior decision is applied in a novel setting, thereby extending the precedent.").

Here, the rule that Petitioner is attempting to advance is that the Fifth Amendment prohibition on self-incrimination requires that if compelled to testify against another party, that the defendant is entitled to transactional immunity, rather than use immunity. That is, the prosecution should be barred from bringing any charges against the defendant, rather than just being prohibited from using the defendant's compelled testimony.

Petitioner has provided no federal authority for this proposition. Because no United States Supreme Court decision has held that a defendant compelled to testify at a different trial is entitled to transactional immunity, adoption of Petitioner's proposed rule would plainly violate Teague.

Even assuming Teague does not bar Petitioner's claim, Petitioner cannot show that the Court of Appeal's rejection of her Fifth Amendment claim was contrary to or an unreasonable application of clearly established federal law. See, e.g., Stenson v. Lambert, 504 F.3d 873, 881 (9th Cir. 2007) ("Where the Supreme Court has not addressed an issue in its holding, a state court adjudication of the issue . . . cannot be contrary to, or an unreasonable application of, clearly established federal law.". See also Wright v. Van Patten, 552 U.S. 120, 126 (where Supreme Court cases give no clear answer to question presented, habeas relief is not warranted under the AEDPA).

The Fifth Amendment provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." "The privilege against self-incrimination can be asserted "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." Kastigar v. United States, 406 U.S. 441, 444 (1972).

However, a witness who has been granted immunity does not possess a Fifth Amendment right against self-incrimination and must, under pain of contempt, answer the questions posed. See Kastigar, 406 U.S. at 453 ("We hold that such immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege."); United States v. Patane, 542 U.S. 630, 638 (2004).

Petitioner does not dispute that she was provided immunity for the testimony she

was compelled to give at Alderete's trial. Petitioner contends that she should have been granted transactional immunity rather than use immunity, and barred from prosecution rather than only being protected against the use of the statements that she was compelled to make at Alderete's trial. While Petitioner argues that the state court erred in denying her further protections, United States Supreme Court law clearly indicates that use immunity is coextensive with the scope of the privilege of self-incrimination. Petitioner was provided the protections afforded under the Fifth Amendment as determined by the United States Supreme Court, and the state court's denial of the Fifth Amendment claim was a reasonable application of federal law.

Based on the foregoing, the Court agrees with the Court of Appeal's determination that the trial court properly compelled Petitioner to testify at Alderete's trial as she was provided use immunity for any incriminating statements she was compelled to make. The immunity grant discontinued Petitioner's right against self-incrimination. See Kastigar, 406 U.S. at 453 (a grant of immunity from prosecution for the individual's testimony is sufficient to compel testimony over a claim of privilege).

In any event, even if this Court were to find that Petitioner's Federal Constitutional rights were violated by compelling Petitioner to testify under the grant of immunity, Petitioner still would not be entitled to habeas relief unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993). The Court is not prepared to find that compelling Petitioner to testify at Alderete's trial had a substantial and injurious effect in determining the verdict. Petitioner plead no contest to the charges, but even if she had not, her testimony provided from Alderete's trial could not have been admitted at her trial. Accordingly, it is difficult to determine the harmful effect, if any, on Petitioner. Further, Petitioner does not present evidence of harm. On this record, the Court has no basis for finding that Petitioner's testimony, provided under a grant of immunity, had a substantial and injurious effect on the verdict.

Petitioner's claim is Teauge barred. Even if allowed, the California Court of

Appeal decision denying this claim was not contrary to clearly established Supreme Court precedent. Accordingly, Petitioner is not entitled to habeas relief.

## V.     CERTIFICATE OF APPEALABILITY

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)    (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000).  While the petitioner is not required to prove the

merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that no reasonable jurist would find the Court's determination that Petitioner is not entitled to federal habeas corpus relief wrong or debatable, nor would a reasonable jurist find Petitioner deserving of encouragement to proceed further.  Petitioner has not made the required substantial showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

**VI.    ORDER**

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is DENIED;

2) The Clerk of Court is DIRECTED to enter judgment and close the case; and

3) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   June 27, 2016                        /s/ *Michael J. Seng*
                                              UNITED STATES MAGISTRATE JUDGE